1   LAW OFFICES OF DALE K. GALIPO
    Dale K. Galipo, Esq. (Bar No. 144074)
2   dalekgalipo@yahoo.com
     21800 Burbank Boulevard, Suite 310
3   Woodland Hills, California  91367
    Telephone:   (818) 347-3333
4   Facsimile:    (818) 347-4118

5
    Attorneys for Plaintiffs
6

7                    UNITED STATES DISTRICT COURT

8                   CENTRAL DISTRICT OF CALIFORNIA

9

10
                                        Case No. CV 10-08705 ODW (DTBx)
11  CAROLE KRECHMAN, individually
    and as successor-in-interest to Robert   *Before the Honorable Otis D. Wright*
12  Albert Appel; and SHELDON
    KRECHMAN,                                **PLAINTIFFS' MEMORANDUM OF
13                                           CONTENTIONS OF FACTS AND
                  Plaintiffs,                LAW**
14
                                        PTC:   December 19, 2011 at 2:30 p.m.
15
                                        Trial:   January 3, 2012 at 9:00 a.m.
16        vs.

17

18
    COUNTY OF RIVERSIDE; DEPUTY
19  R. GARCIA; DEPUTY M. ALFARO;
    DEPUTY S. DUSEK; DEPUTY E.
20  CHACON , and DOES 1-10, inclusive,

21               Defendants.

22

23

24

25

26

27

28

# I.  INTRODUCTION

This in an action for damages brought under 42 U.S.C. § 1983 by Plaintiffs Carole and Sheldon Krechman against Defendants County of Riverside, Martin Alfaro, Sean Dusek, Robert Garcia and Edward Chacon.  Plaintiffs' claims arise from an incident in which Robert Appel ("Decedent") died during an encounter with several County of Riverside sheriffs' deputies, and from the County of Riverside's policies, customs, and practices which were the moving force of the unreasonable conduct.  Plaintiffs also bring pendent state claims for negligence, battery, false arrest, and the Bane Act.

Plaintiff seeks compensatory damages under § 1983, including both survival and wrongful death damages, as well as punitive damages and attorney fees under 42 U.S.C. § 1988.

# II.  CONTENTIONS OF FACT

1.  Defendant Garcia responded to a 911 hang-up call which originated from Decedent's home in Palm Desert.  When Garcia arrived at the scene, Decedent was outside his home.  Decedent was not armed and was compliant with Garcia's commands.

2.  Defendant Deputies unreasonably detained Decedent by a display of authority and force.

3.  Defendant Deputies unreasonably arrested Decedent by using aggressive tactics toward him.

4.  Defendant Deputies used excessive force (or failed to intervene to prevent others' excessive force) against Decedent at the scene by, including but not limited to, tackling him to the ground, applying a carotid restraint,  striking him with "hammer blows", handcuffing him, putting him in a prone position, and applying body weight to his back.

5.  The Decedent had no weapon, and never posed an imminent, objectively reasonable threat to the Defendant deputies or to anyone else.

6.  The Decedent lost consciousness while he was in a prone position and the Defendant Deputies were applying their body weight to his back.

7.  The Decedent was handcuffed when the paramedics reached the Decedent, and he was not breathing and had no pulse.

8.  The Defendant Deputies' use of excessive force and unreasonable and dangerous restraint methods were a cause of the Decedent's death.

9.  Each Defendant Deputy was an integral participant in, or failed to intervene to prevent, the wrongful conduct.

10. The Defendant Deputies acted under color of state law and in the course and scope of their employment as sheriffs' deputies for the County of Riverside.

11. The County ratified the aforementioned conduct of the Defendant Deputies.

12. The County failed to implement proper training and policies regarding the carotid restraint and the use of body weight on a prone restrained subject.

13. Decedent experienced pain and suffering and lost his life as a result of the aforementioned wrongful conduct.

14. Plaintiffs experienced and will continue to experience loss of their familial relationship with Decedent and other damages as a result of the aforementioned wrongful conduct.

15. The Defendant Deputies' conduct was malicious, oppressive, or in reckless disregard of Decedent's rights and safety, entitling Plaintiffs to punitive damages.

### III.  CONTENTIONS OF LAW

**A. <u>Fourth Amendment Violation: Unreasonable Detention and Arrest</u>**

Plaintiffs contend that Defendant Deputies violated Decedent's rights under the Fourth Amendment when they detained and arrested Decedent without probable

1   cause.  *Beck v. Ohio*, 379 U.S. 89, 91 (1964) ("Whether [an] arrest was

2   constitutionally valid depends . . . upon whether, at the moment the arrest was made,

3   the deputies had probable cause to make it."); *Borunda v. Richman*, 885 F.2d 1384,

4   1391 (9th Cir. 1988) ("An arrest without probable cause violates the Fourth

5   Amendment and gives rise to a claim for damages under Section 1983.").

6

7       **B. <u>Fourth Amendment Violation: Use of Excessive Force</u>**

8           Plaintiffs contend that the use of force against Decedent by Defendant

9   Deputies—including tackling him to the ground, applying a carotid restraint,

10  striking him with "hammer blows", putting him in a prone position, and applying

11  body weight to his back—was a cause of injuries and damages to Decedent and

12  violated Decedent's rights under the Fourth Amendment to be free from

13  unreasonable seizures.

14          The reasonableness of the force used is determined by "'careful[ly] balancing

15  . . . the nature and quality of the intrusion on the individual's Fourth Amendment

16  interests against the countervailing governmental interests at stake.'"  *Graham v.*

17  *Connor*, 490 U.S. 386, 396 (1989) (quoting *Tennessee v. Garner*, 471 U.S. 1, 8

18  (1985)).  Moreover, all claims of excessive force must be evaluated under a standard

19  of objective reasonableness, in light of the facts and circumstances confronting the

20  deputies "from the perspective of a reasonable officer on the scene, rather than with

21  the 20/20 vision of hindsight."  *Id.* at 396-97.

22          Government interest factors to balance against the type and amount of force

23  used include "the severity of the crime at issue, whether the suspect poses an

24  immediate threat to the safety of the deputies or others, and whether he is actively

25  resisting arrest or attempting to evade arrest by flight."  *Graham*, 490 U.S. at 396.

26  The "most important single element of the three specified factors [is] whether the

27  suspect poses an immediate threat to the safety of the deputies or others."   *Chew v.*

28  *Gates*, 27 F.3d 1432, 1441 (9th Cir.1994).  The *Graham* Court did not limit the

1  inquiry to these three factors, however, and another factor to consider is the

2  availability of alternative methods to capture a person. *Smith v. County of Hemet*,

3  394 F.3d 689, 701 (2005) (*en banc*). Even where some force is justified, the amount

4  actually used may be excessive. *Santos v. Gates*, 287 F.3d 846, 853–54 (9th Cir.

5  2002). A "desire to resolve quickly a potentially dangerous situation" does not

6  justify deadly force. *Deorle v. Rutherford*, 272 F.3d 1272, 1281 (9th Cir. 2001).

7  Moreover, a "simple statement by an officer that he fears for his safety or the safety

8  of others is not enough; there must be objective factors to justify such a concern."

9  *Id.*

10       Moreover, Defendant Deputies are liable for failing to intervene in the Fourth

11  Amendment violations against Decedent. A law enforcement officer has an

12  affirmative duty to intervene on the behalf of a citizen whose constitutional rights

13  are being violated in his presence by other deputies. *United States* v. *Koon,* 34 F.3d

14  1416, 1447 n.25 (9th Cir. 1994) ("[A]n officer who failed to intercede when his

15  colleagues were depriving a victim of his Fourth Amendment right to be free from

16  unreasonable force in the course of an arrest would, like his colleagues, be

17  responsible for subjecting the victim to a deprivation of his Fourth Amendment

18  rights."); *Chuman* v. *Wright,* 76 F.3d 292, 294-95 (9th Cir. 1996); *Blankenhorn* v.

19  *County of Orange,* 485 F.3d 463, 481 n.12 (9th 22 Cir. 2007); *O'Neill* v. *Krzeminski,*

20  839 F.2d 9, 11 (2d Cir. 1988) ("A law enforcement officer has an affirmative duty to

21  intercede on the behalf of a citizen whose constitutional rights are being violated in

22  his presence by other deputies.").

23

24  **C. Fourth Amendment: Unreasonable Delay or Denial of Medical Care**

25       Plaintiffs contend that Defendant Deputies unreasonably delayed or denied

26  Decedent's medical treatment. Under the Fourth Amendment, deputies must

27  promptly summon, and may not delay or deny medical care for an arrestee unless it

28

1   is "objectively reasonable" under all the circumstances known to the deputies on the

2   scene.

3       In evaluating a claim for denial of medical care, the Ninth Circuit held in

4   1986 that "due process requires that police officers seek the necessary medical

5   attention for a detainee when he or she has been injured while being apprehended by

6   either promptly summoning the necessary medical help or by taking the injured

7   detainee to a hospital." *Maddox v. County of Los Angeles*, 792 F.2d 1408, 1415 (9th

8   Cir. 1986) (declining to explicitly "decide the precise standard which applies in

9   determining whether a County fulfills its due process obligations to pretrial

10  detainees who require medical attention."). In a subsequent case, *Tatum v. County*

11  *and County of San Francisco*, 441 F.3d 1090 (9th Cir. 2006), the Circuit addressed

12  *Maddox* and revisited the issue of the applicable standard for claims of denial of

13  medical care following an arrest: "[W]e think that *Maddox* sets the standard for

14  *objectively reasonable* post-arrest care. Accordingly, we hold that a police officer

15  who promptly summons the necessary medical assistance has acted reasonably for

16  purposes of the Fourth Amendment . . . ." *Id.* at 1099 (emphasis added).

17      Under the Fourth Amendment, "the denial of medical care to an arrestee is

18  judged as but one component of the objective reasonableness standard for any

19  'seizure' and is evaluated by reference to the totality of circumstances and the

20  reasonable person standard." *Freece v. Young*, 756 F. Supp. 699, 701 (W.D.N.Y.

21  1991); *see also Garvey v. Gibbons*, 2008 WL 4500011, at *11 (C.D. Cal. Oct. 5,

22  2008) (holding that "the Ninth Circuit has declared that, in light of the mandate

23  of *Graham* that all excessive force claims arising out of an arrest should be analyzed

24  under the Fourth Amendment, the deputies' duty to obtain medical treatment for an

25  arrestee arises under the Fourth Amendment," and *Maddox* sets the standard for

26  objectively reasonable post-arrest care); *Estate of Phillips v. County of Milwaukee*,

27  123 F.3d 586, 596 (7th Cir. 1997) (finding that "the Fourth Amendment requires

28  that seizures be *reasonable* under all the circumstances; and we do think that it

1  would be objectively unreasonable in certain circumstances to deny needed medical

2  attention to an individual placed in custody who cannot help himself").

3

4      **D.** __First and Fourteenth Amendment: Interference With Familial__

5          __Relationship__

6        Plaintiffs contend that Defendant Deputies deprived Plaintiffs of their rights

7  to a familial relationship with the Decedent in violation of the First and Fourteenth

8  Amendment, entitling Plaintiffs to wrongful death damages.

9        The Ninth Circuit has consistently recognized a Fourteenth Amendment

10  liberty interest of parents in the companionship and society of their adult children,

11  even when the deprivation of that interest is incidental to the state action.  *See, e.g.*,

12  *Crowe v. County of San Diego*, 608 F.3d 406, 441 (9th Cir. 2010); *Toguchi v.*

13  *Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004); and *Lee v. County of Los Angeles*, 250

14  F.3d 668, 685-86 (9th Cir. 2001).  A parent's ability to seek damages for the

15  deprivation of their children's constitutional rights is not limited to instances in

16  which the decedent child was a minor at the time of death because it is "the familial

17  relationship, and not the more narrow custodial interest of the parents, [which] gave

18  rise to the due process action."  *Smith v. County of Fontana*, 818 F.2d 1411, 1419

19  (9th Cir. 1987), overruled on other grounds by *Hodgers-Durgin v. de la Vina*, 199

20  F.3d 1037 (9th Cir. 1999).

21        Further, Plaintiffs need prove only that the constitutional deprivation was

22  more than merely negligent, not that the deprivation was intentional.  "As long as

23  the state official's action which deprived the plaintiffs of their liberty was more than

24  merely negligent, the plaintiffs can state a section 1983 claim without further

25  alleging that the official was trying to break up their family."  *Smith*, 818 F.2d at

26  1420.  Official conduct that "shocks the conscience" in depriving parents of that

27  interest is cognizable as a violation of due process.  *Porter v. Osborn*, 546 F.3d

28  1131, 1137 (9th Cir. 2008).  In determining whether excessive force shocks the

conscience, the court must first ask "whether the circumstances are such that actual deliberation [by the officer] is practical."  *Id.* at 1137(quoting *Moreland v. Las Vegas Metro. Police Dep't*, 159 F.3d 365, 372 (9th Cir.1998) (internal quotation marks omitted)); *Wilkinson v. Torres*, 610 F.3d 546, 554 (9th Cir.2010).  Where actual deliberation is practical, then an officer's "deliberate indifference" may suffice to shock the conscience.  *Porter*, 546 F.3d at 1137; *Wilkinson*, 610 F.3d at 554.

### E. <u>Supervisory and Municipal Liability</u>

Plaintiffs contend that the County is liable for Decedent's injuries and death. First, the County ratified the Defendant Deputies' constitutionally deficient actions. A municipality "may be held liable for a constitutional violation if a final policymaker ratifies a subordinate's actions."  *Lytle v. Carl*, 382 F.3d 978, 987 (9th Cir. 2004).  This requires the policymaker to both "have knowledge of the constitutional violation and actually approve it."  *Id*; *see also Christie v. Iopa*, 176 F.3d 1231, 1239 (9th Cir. 1999).

Second, the County failed to implement proper training and policies regarding the carotid restraint and the use of body weight on a prone restrained subject.  A municipality's failure to train its employees may create § 1983 liability where the "failure to train amounts to deliberate indifference to the rights of persons with whom the [employees] come into contact."  *County of Canton v. Harris*, 489 U.S. 378, 388 (1989).   "The issue is whether the training program is adequate and, if it is not, whether such inadequate training can justifiably be said to represent municipal policy."  *Long v. County of Los Angeles*, 442 F.3d 1178, 1186 (9th Cir. 2006).  A plaintiff may establish a failure to train if the municipality's training policy "amounts to deliberate indifference to the [constitutional] rights of the persons with whom [its deputies] are likely to come into contact," and the constitutional injury would have been avoided had it properly trained those deputies. *Blankenhorn v.*

1  *County of Orange*, 485 F.3d 463, 484 (9th Cir. 2007); *Lee*, 250 F.3d at 681.  A

2  municipality is "deliberately indifferent" when the need for more or different action,

3  "is so obvious, and the inadequacy [of the current procedure] so likely to result in

4  the violation of constitutional rights, that the policymakers … can reasonably be

5  said to have been deliberately indifferent to the need."  *Canton*, 489 U.S. at 390; *Lee*

6  *v. Los Angeles*, 250 F.3d 668, 682 (9th Cir. 2001).  A "highly predictable"

7  constitutional violation due to a "failure to equip law enforcement deputies with

8  specific tools to handle recurring situations" gives rise to liability for failure to train.

9  *See Board of County Comm'rs v. Brown*, 520 U.S. 397, 407-10 (1997); *Long*, 442

10  F.3d at 1186-87.

11

12  **F.  <u>False Arrest/False Imprisonment</u>**

13  Plaintiffs contend that Decedent was falsely arrested and detained for an

14  appreciable period of time by Defendant Deputies without reasonable suspicion or

15  probable cause that he had committed a crime.  *Tekle v. United States*, 511 F.3d 839,

16  848-50 (9th Cir. 2007).  The County is vicariously liable pursuant to Cal. Gov. Code

17  § 815.2(a) ("A public entity is liable for injury proximately caused by an act or

18  omission of an employee of the public entity within the scope of his employment if

19  the act or omission would, apart from this section, have given rise to a cause of

20  action against that employee or his personal representative.").

21

22  **G.  <u>Battery</u>**

23  Plaintiffs contend that Defendant Deputies, while acting in the course and

24  scope of their employment as County of Riverside employees, used unreasonable or

25  excessive force against Decedent when they, among other things, tackled him to the

26  ground, applied a carotid restraint, handcuffed him, put him in a prone position, and

27  applied body weight to his back.  Battery claims for excessive force by a law

28  enforcement official in California are governed by the reasonableness standard of

the Fourth Amendment.  *Edson v. County of Anaheim*, 63 Cal. App. 4th 1269, 1272-74 (1998).  The County is vicariously liable pursuant to Cal. Gov. Code § 815.2(a), and Plaintiffs are entitled to both survival and wrongful death damages under state law.

**H. <u>Negligence</u>**

Plaintiffs contend that Defendant Deputies and the County breached their legal duties, including the duty to use reasonable care under the circumstances, which proximately caused the injury, damage, loss, or harm to Decedent and/or Plaintiffs.  Specifically, the defendant deputies used negligent tactics leading up to their negligent detention and arrest of Decedent, and negligently used excessive force against Decedent and denied or delayed his medical attention.  "The elements of a cause of action for negligence are (1) a legal duty to use reasonable care, (2) breach of that duty, and (3) proximate [or legal] cause between the breach and (4) the plaintiff's injury." *Saldate v. Wilshire Credit Corp.*, 686 F.Supp.2d 1051, 1062 (E.D. Cal. 2010) (citing *Mendoza v. County of Los Angeles*, 66 Cal. App. 4th 1333, 1339 (Cal. Ct. App. 1998)).  Police officers owe a duty of ordinary care when pursuing, apprehending, or using force to subdue a person.  *See Grudt v. City of Los Angeles*, 2 Cal. 3d 575 (1970) ("At the very least, the evidence favorable to plaintiff raised a reasonable doubt whether [the officers] acted in a manner consistent with their duty of due care when they originally decided to apprehend Grudt, when they approached his vehicle with drawn weapons, and when they shot him to death."); *Munoz v. Olin*, 24 Cal. 3d 629, 634 (1979) ("Defendants do not dispute that an officer's lack of due care can give rise to negligence liability for the intentional shooting death of a suspect.  In *Grudt* . . . this court so held."); *Lugtu v. California Highway Patrol*, 26 Cal. 4th 703, 718-21 (2001) (holding that "a law enforcement officer has a duty to exercise reasonable care for the safety of those persons whom the officer stops," and "the applicable standard of care by which the officer's

conduct must be measured in this context is simply that 'of a reasonably prudent person under like circumstances'"); *Miller v. Kennedy*, 196 Cal. App. 3d 141, 145 (1987) (applying same standard of ordinary care to police officer who, while in possession of a loaded gun, attempted to wrestle with man resulting in accidental discharge into man's leg); *Gibson v. City of Pasadena*, 83 Cal. App. 3d 651, 658 (1978) (holding that police officers must act as "reasonably prudent persons under the circumstances" in pursuing a suspect wanted solely for a traffic violation on city streets at speeds over 100 mph).  This duty of ordinary care also applies to conduct that preceded and precipitated the use of force.  *See Grudt*, 2 Cal. 3d at 587; *Munoz v. Olin*, 24 Cal. 3d 629, 634 (1979); *Hernandez v. County of Pomona*, 46 Cal. 4th 501, 520-21 (2009).

The County is vicariously liable for its employees' negligent acts or omissions pursuant to Cal. Gov. Code § 815.2(a), and Plaintiffs are entitled to both survival and wrongful death damages under state law.

## I.  **Damages**

Plaintiffs seek wrongful death damages for loss of comfort, care, love, companionship, and society of the Decedent; special damages for Decedent's funeral and burial expenses; attorney fees under § 1988; and punitive damages.  In addition, Plaintiff Carole Krechman seeks survival damages as Decedent's successor in interest.

Plaintiffs, as successors-in-interest to the Decedent, may recover survival damages for harm suffered by the decedent, including loss-of-life and pain and suffering.  Because federal law does not address the survival of civil rights actions under § 1983, courts look to state law governing the survival of actions and the damages that may be recovered.  42 U.S.C. § 1988.  However, state law may not be applied when it is "inconsistent with the Constitution and laws of the United States."  *Id.*  "The policies underlying § 1983 include compensation of persons

injured by deprivation of federal rights and prevention of abuses of power by those acting under color of state law." *Robertson v. Wegmann*, 436 U.S. 584, 590-91 (1978).

It would undermine the policies of § 1983 to apply state law that precludes recovery of loss-of-life or pain and suffering damages when the death of the victim resulted from the constitutional violations.  In cases such as this, where the Decedent died during the unconstitutional conduct, absent damages for pain and suffering or loss of life, the recoverable compensatory damages for the injury inflicted on the decedent would be minimal to non-existent.  Such a result would be contrary to § 1983's goals of compensation and deterrence.  The Ninth Circuit has not spoken on the issue of whether pain and suffering damages are recoverable in § 1983 actions, but several district courts within the Circuit have held that they are.  *See*, *e.g.*, *Guyton v. Phillips*, 532 F. Supp. 1154 (N.D. Cal. 1981) (holding that the denial of recovery for pain and suffering is inconsistent with the policies underlying § 1983); *Williams v. County of Oakland*, 915 F. Supp. 1074 (N.D. Cal. 1996) (extending the holding of *Guyton* to cases where the victim's death was not a result of the constitutional violation); *Garcia v. Whitehead*, 961 F. Supp. 230 (C.D. Cal. 1997) (following *Guyton*).

The Seventh and Tenth Circuits have similarly held that state laws that preclude the recovery of loss-of-life damages in § 1983 suits where the alleged unconstitutional conduct resulted in death are inconsistent with the policies of § 1983.  *Bell v. Milwaukee*, 746 F.2d 1205 (7th Cir. 1984); *Berry v. County of Muskogee*, 900 F.2d 1489 (10th Cir. 1990).  In *Bell*, the Seventh Circuit explained that the Wisconsin law precluding recovery to the victim's estate for loss of life was inconsistent with the deterrent policy of §1983 and the Fourteenth Amendment's protection of life: "[S]ince in the instant case the killing is the unconstitutional act, there would result more than a marginal loss of influence on potentially unconstitutional actors and therefore on the ability of Section 1983 to deter official

lawlessness if the victim's estate could not bring suit to recover for loss of life."  In *Berry*, the Seventh Circuit held that the application of Oklahoma's survival statute, which arguably limited recovery to property loss and loss of earnings by the decedent, would be inconsistent with Congress's intention to provide significant recompense when a constitutional violation causes the death of a victim and would result in deficient deterrence.  Accordingly, survival damages are recoverable by Plaintiffs in this action.

## **PLAINTIFFS' CLAIMS**

Claim 1:      Fourth Amendment violation.  Defendant Deputies detained and arrested Decedent without reasonable articulable suspicion or probable cause in violation of the Fourth Amendment.

Claim 2:      Fourth Amendment violation.  Defendant Deputies used excessive force against Decedent, or failed to intervene to prevent other deputies from using excessive force against Decedent, in violation of the Fourth Amendment rights of Decedent.

Claim 3:      Fourth Amendment violation.  Defendant Deputies unreasonably denied or delayed medical assistance for Decedent in violation of the Fourth Amendment.

Claim 4:      First and Fourteenth Amendment violation.  Defendant Deputies deprived Plaintiffs of their rights to familial relationship with Decedent in violation of the First and Fourteenth Amendments.

Claim 5:      Supervisory and Municipal Liability for Violations of Civil Rights.  County of Riverside failed to implement proper training and polices.  County of Riverside ratified the Defendant Deputies' unconstitutional conduct and the basis for it.

Claim 6:      False Arrest/False Imprisonment.  Defendant Deputies falsely

detained and arrested Decedent for an appreciable period of time without reasonable suspicion or probable cause that he had committed a crime.  The Defendant County of Riverside is vicariously liable for the acts and omissions of the Defendant Deputies.

Claim 7:     Battery.  Defendant Deputies used unreasonable force against Decedent under the circumstances.  Defendant County of Riverside is vicariously liable for the acts and omissions of the Defendant Deputies.

Claim 8:     Negligence.  Defendant Deputies negligently detained Decedent, negligently used force against him, and negligently delayed or denied his medical care.  Defendant County of Riverside is vicariously liable for the acts and omissions of the Defendant Deputies.

## ELEMENTS REQUIRED TO ESTABLISH PLAINTIFFS' CLAIMS

Claim 1:     (i) Defendant Deputies acted under color of law; (ii) Defendant Deputies seized Decedent's person; (iii) the seizure was unreasonable.  *See* Ninth Circuit Manual of Model Jury Instructions, No. 9.18.

Claim 2:     (i) Defendant Deputies acted under color of law; (ii) Defendant Deputies used excessive force against Decedent or failed to intervene to prevent the use of excessive force; (iii) the excessive force was a cause of injury, damage, or harm to Decedent and Plaintiffs.

*See* Ninth Circuit Manual of Model Jury Instructions, No. 9.22; *Graham v. Connor*, 490 U.S. 386, 397 (1989); *Robins v. Meecham*, 60 F.3d 1436 (9th Cir. 1995).

Claim 3:     (i) Defendant Deputies acted under color of law; (ii) Defendant Deputies' denial or delay of medical care was objectively unreasonable; (iii) Defendant Deputies' acts were a cause of injury, damage, or harm to Decedent and Plaintiffs.

1   *See* Ninth Circuit Manual of Model Civil Jury Instructions, No. 9.27

2   (Approved 10/2010) (comment); *Maddox v. County of Los Angeles*, 792 F.2d 1408,

3   1415 (9th Cir. 1986); *Pierce v. Multnomah County*, 76 F.3d 1032, 1043 (9th Cir.

4   1996); *Tatum v. County and County of San Francisco*, 441 F.3d 1090, 1099 (9th Cir.

5   2006); *Garvey v. Gibbons*, No. CV 03-6043-GPS (JTL), 2008 WL 4500011, at *11

6   (C.D. Cal. Oct. 5, 2008); *Estate of Phillips v. County of Milwaukee*, 123 F.3d 586,

7   596 (7th Cir. 1997); *Freece v. Young*, 756 F. Supp. 699, 701 (W.D.N.Y. 1991).

8       <u>Claim 4</u>:    (i) Defendant Deputies acted with deliberate indifference to the

9   Decedent's rights; (ii) Defendant Deputies' use of force and denial or delay of

10  Decedent's medical care was the cause of Decedent's death; (iii) Defendant

11  Deputies' use of force and denial or delay of Decedent's medical care interfered

12  with the Plaintiffs' familial relationship with the Decedent.  *See Wilkinson v. Torres*,

13  610 F.3d 546, 554 (9th Cir.2010); *Porter v. Osborn*, 546 F.3d 1131, 1137 (9th Cir.

14  2008); *Lee v. County of Los Angeles,* 250 F.3d 668 (2001).

15      <u>Claim 5</u>:    (i) Defendant Deputies deprived Decedent of his Fourth

16  Amendment right to be free from unreasonable seizures, (ii) a final policymaker of

17  the County of Riverside ratified Defendant Deputies' unconstitutional conduct and

18  the basis for it.

19      ***<u>and/or</u>***    (i) Defendant Deputies deprived Decedent of his Fourth

20  Amendment right to be free from unreasonable seizures; (ii) the County of Riverside

21  failed to implement proper training and polices, (iii) the acts or omissions of the

22  County of Riverside amounted to deliberate indifference to its citizens' rights; (iv)

23  the acts or omissions of the County of Riverside caused the deprivation of

24  Decedent's rights.

25      *See* Manual of Model Civil Jury Instructions, Instruction 9.6 (approved

26  10/2009); *Blankenhorn v. County of Orange*, 485 F.3d 463, 484 (9th Cir. 2007);

27  *County of Canton v. Harris*, 489 U.S. 378, 388 (1989).

28

1    <u>Claim 6</u>:      (i) Defendant Deputies intentionally deprived Decedent of his

2    freedom of movement by use of physical barriers, force, threat of force, and/or

3    unreasonable duress; (ii) Decedent did not consent; (iii) Decedent was actually

4    harmed; (iv) Defendant Deputies' conduct was a substantial factor in causing

5    Decedent and/or Plaintiffs' harm.  *See* CACI 1400.

6    <u>Claim 7</u>:      (i) Defendant Deputies' used unreasonable force against

7    Decedent; (ii) the unreasonable force was a cause of injury, damage, loss, or harm to

8    the Decedent and/or Plaintiffs.  *See* CACI 1305.

9    <u>Claim 8</u>:      (i) Defendant Deputies failed to use reasonable care to prevent

10   harm to Decedent; (ii) the negligence of Defendant Deputies was a cause of injury,

11   damage, loss, or harm to Decedent and/or Plaintiffs.

12   *See* CACI 400, 401.

13

14   ## IV. KEY EVIDENCE RELIED ON BY PLAINTIFFS IN SUPPORT OF

15   ## THEIR CLAIMS

16      1.  Testimony of Plaintiffs;

17      2.  Testimony of Defendants;

18      3.  Testimony of percipient witnesses;

19      4.  Photographs;

20      5.  Police reports;

21      6.  Dispatch tapes;

22      7.  Recorded interviews; and

23      8.  Testimony of experts.

24

25   ## V. ANTICIPATED EVIDENTIARY ISSUES

26   1.  Plaintiffs have filed a Motion In Limine to Exclude Improper Hindsight

27      Evidence.

28

PLAINTIFFS' MEMORANDUM OF CONTENTIONS

2.   Plaintiffs have filed a Motion In Limine to Limit the Testimony of Expert Gary Vilke

3.   Plaintiffs have filed a Motion in Limine to  Exclude Evidence of Prior Unrelated Litigation.

## VI.  BIFURCATION OF ISSUES

Defendants are requesting bifurcation of *Monell* and bifurcation of the amount of punitive damages.  Plaintiffs oppose the bifurcation of *Monell*, but  do not oppose bifurcation of the amount of punitive damages into a brief second phase..

## VII.  THE TRIAL IS BY JURY

The issues herein are triable to a jury as a matter of right.  The parties made a timely demand for trial by jury.

## VIII.  ATTORNEYS' FEES

Attorneys' fees are allowed to a prevailing plaintiff pursuant to 42 U.S.C. § 1988.

## IX.  ABANDONMENT OF ISSUES

Plaintiffs do not intend to pursue their claim under the Bane Act.

DATED:  December 12. 2011          LAW OFFICES OF DALE K. GALIPO


By_____/s/ Dale K. Galipo_____
                 Dale K. Galipo
                 Attorneys for Plaintiffs

Case No. CV 10-08705 ODW (DTBx)
PLAINTIFFS' MEMORANDUM OF CONTENTIONS