**Bruce E. Disenhouse (SBN 078760)**
BDisenhouse@krsattys-riv.com
KINKLE, RODIGER AND SPRIGGS
Professional Corporation
3333 Fourteenth Street
Riverside, California 92501
(951) 683-2410
FAX (951) 683-7759

Attorneys for COUNTY OF RIVERSIDE, on behalf of itself and as erroneously sued as The Riverside County Sheriff's Department; DEPUTY ROBERT GARCIA; DEPUTY MARTIN ALFARO; DEPUTY SEAN DUSEK; and DEPUTY EDWARD CHACON

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAROLE KRECHMAN, Individually, and as successor-in-interest to Robert Albert Appel; and SHELDON KRECHMAN, <br><br> Plaintiffs, <br><br> v. <br><br> COUNTY OF RIVERSIDE; DEPUTY R. GARCIA; DEPUTY M. ALFARO; DEPUTY S. DUSEK; DEPUTY E. CHACON, and DOES 1-10, inclusive, <br><br> Defendants. | CASE NO.: CV10-08705 ODW(DTBx) <br><br> **DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW** <br><br> TRIAL: January 3, 2012 |

Pursuant to this Court's Order and Local Rule, Defendants, COUNTY OF RIVERSIDE *on behalf of itself and as erroneously sued as The Riverside County Sheriff's Department;* DEPUTY ROBERT GARCIA; DEPUTY MARTIN ALFARO; DEPUTY SEAN DUSEK; and DEPUTY EDWARD CHACON (hereinafter collectively referred to as "DEFENDANTS"), respectfully submit the following Memorandum of Contentions of Fact and Law:

//

---

1

DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

# I

# **CONTENTIONS OF FACT**

On May 14, 2010, at 2200 hours, Riverside County Sheriff's Investigator Robert Garcia was dispatched to 440 Desert Holley Drive, in the city of Palm Desert, in reference to a 911 hang-up call at the residence made by Plaintiff Carole Krechman. Upon arrival, Investigator Garcia contacted Robert Appel, who was sweating profusely and was not listening to Investigator Garcia's commands. Mr. Appel had a blank stare and was yelling unintelligible words. Mr. Appel ran a few houses away from Investigator Garcia and hid in some bushes. Mr. Appel was speaking to imaginary people, stating they were following him and that they had given him drugs. Based on Mr. Appel's actions, Investigator Garcia made the decision he was going to detain Mr. Appel pursuant to Section 5150 of the <u>Welfare an Institutions Code</u>. Due to Mr. Appel's behavior and large stature, Investigator Garcia waited for back-up to arrive prior to attempting to detain Mr. Appel.

Sheriff's Deputy Edward Chacon arrived at the location to assist, at which time Investigator Garcia advised Mr. Appel he was going to be detained and have handcuffs placed on him. Mr. Appel, who was on his knees in the paved roadway, complied at first and allowed Investigator Garcia to place a handcuff on his left wrist. As Investigator Garcia went to place a handcuff on his right wrist, Mr. Appel pulled away from Investigator Garcia. Both Investigator Garcia and Mr. Appel fell forward to the ground, at which time Investigator Garcia and Deputy Chacon held Mr. Appel on the ground. While on the ground, Mr. Appel bit Investigator Garcia on the right arm and even pulled Investigator Garcia's pen from his shirt pocket. During the confrontation, Investigator Garcia struck Mr. Appel three times in the facial area with a closed fist to prevent further injury as a result of Mr. Appel's biting.

Investigators Martin Alfaro and Sean Dusek, who had heard the earlier radio traffic, arrived and observed that Investigator Garcia and Deputy Chacon were in a physical altercation in the roadway with Mr. Appel. Investigator Alfaro approached

Mr. Appel and grabbed his left arm. Investigator Alfaro applied an arm bar and attempted to gain pain compliance from Mr. Appel by putting his left arm behind his back. Mr. Appel continued to resist with extreme strength and the arm bar had no effect against Mr. Appel. Investigator Alfaro was eventually able to get Mr. Appel's left arm behind his back and complete the handcuffing process.

Investigator Dusek approached Mr. Appel at the same time as Investigator Alfaro and grabbed Mr. Appel's right arm. Investigator Dusek placed his knee on the rear of Mr. Appel's right shoulder to keep Mr. Appel pinned down to the ground and to prevent him from using his upper body to resist. Investigator Dusek applied an arm bar to Mr. Appel's right arm and also noticed that Mr. Appel was unusually strong. Investigator Dusek was eventually able to get Mr. Appel's right arm behind his back.

Even after being handcuffed, Mr. Appel continued to struggle and resist for a short time. Mr. Appel then became unresponsive and his breathing became shallow. Deputies monitored Mr. Appel's vitals and immediately requested medical aid to respond to the location. Upon arrival of medical personnel, Mr. Appel had no pulse. First-aid was administered and Mr. Appel regained a pulse and shallow breathing. Mr. Appel was transported to Eisenhower Medical Center where breathing issues surfaced and he later was pronounced deceased.

An autopsy was conducted on May 17, 2010 by veteran forensic pathologist Dr. Scott McCormick. Cause of death was sudden cardiac arrest. The Decedent's body had numerous abrasions and contusions consistent with a roadway struggle, but no other significant injuries. Though Plaintiffs CAROLE KRECHMAN and SHELDON KRECHMAN (hereinafter jointly referred to as "PLAINTIFFS"), may claim otherwise, there are no objective signs that Decedent succumbed to positional asphyxiation, and DEFENDANTS will present two experts on that issue at trial. Dr. McCormick, who has performed more than 3,000 autopsies in his career, and Dr. Gary Vilke, an expert in police custody sudden cardiac arrest deaths. Dr. Vilke has

concluded that decedent's cardiac arrest was caused by severe hyperkalemia associated with renal failure.

DEFENDANTS have retained an expert in police practices who was instrumental in creating use of force standards for all peace officers within this state, Robert Fonzi. His Rule 26 report thoroughly and accurately analyzes the conduct of the involved officers and concludes their conduct met all applicable standards.

## II

## CONTENTIONS OF LAW

### Federal Claims

PLAINTIFFS KRECHMAN purport to assert both Fourth Amendment and Fourteenth Amendment claims, under 42 USC Section 1983, arising out of the death of Mr. Appel against the DEFENDANTS. Settled 9th Circuit law, however, limits those claims to a Fourteenth Amendment right. Fourth Amendment rights are personal rights which may not be vicariously asserted. Because Fourth Amendment rights cannot be vicariously asserted, family members lack standing to assert their own Fourth Amendment claims for any alleged unlawful arrest or excessive force used on the Decedent. Moreland v. Las Vegas Metro Police 159 F3d 365, 369 (9th Cir. 1998); Smith v. City of Fontana 818 F2d 1411, 1417 (9th Cir. 1987); Abston v. City of Merced 2009 Lexis 96800 (Oct. 20, 2009).

DEFENDANTS concede Decedent was detained. DEFENDANTS contend his detention was both lawful and proper, as it was their intent to have Decedent taken to a medical facility, pursuant to the provisions of Welfare an Institutions Code Section 5150, which authorize such detention where peace officers believe that person is a danger to him/herself or to others. Decedent clearly fit that bill. The initial detention was clearly constitutional when analyzed by Terry probable cause standards.

Police officers may reasonably use force where they have probable cause to detain a person when they believe that the suspect may have violated the law or

poses a threat of serious physical harm to the officers or others. See <u>Macechern v. City of Manhattan Beach</u> (CD Cal 2009) 623 F.Supp.2d 1092, 1101. Even if an officer negligently places himself in a position where he has to use force, he does not violate the Fourth Amendment if that use of force was objectively reasonable. <u>Billington v. Smith</u> 292 F3d 1177, 1190 (9th Cir. 2005). The Fourth Amendment does not require an officer to exhaust every other alternative before using justifiable force. <u>Forret v. Richardson</u> 112 F3d 416, 420 (9th Cir. 1997).

Moreover, even if excessive force has been used, qualified immunity applies to an officer's conduct where an objectively reasonable officer would not have known that the conduct was unconstitutional under the circumstances. <u>Saucier v. Katz</u> 533 US 194, 202 (2001); <u>Brosseau v. Haugen</u> 543 US 194, 198 (2004); <u>Pearson v. Callahan</u> 129 S. Ct. 808, 818 (2009). Under the facts here, under both prongs, qualified immunity applies.

As to PLAINTIFFS' Fourteenth Amendment claim, only conduct that shocks the conscience violates the Fourteenth Amendment in the 42 USC Section 1983 context. <u>County of Lewis v. Sacramento</u> 523 US 833, 846 (1998). The 9th Circuit has analyzed such claims on a continuum, a spectrum that travels from "a purpose to harm" to a "deliberate indifference" standard. <u>Porter v. Osborn</u> 546 F3d 1131, 1137. Under the purpose to harm standard, there is no Fourteenth Amendment violation unless PLAINTIFFS can establish that the deputies' conduct in restraining the Decedent was to cause harm unrelated to the legitimate object of detention. <u>Lewis</u>, *supra*, at 836; 1100-1101. DEFENDANTS contend the purpose to harm standard applies herein, since that standard applies to "fast paced circumstances presenting competing public safety obligations." <u>Bingue v. Prunchak</u> 512 F3d 1169, 1176 (9th Cir. 2008); <u>Porter</u>, *supra*, at pages 1139-1140. Here, the total time between the officer's decision to restrain the Decedent and the discovery that he was not breathing was less than two minutes. Even when the deputies' conduct is analyzed from a deliberate indifference standard, their conduct clearly met constitutional

muster, since there is no evidence that the officers knew of the significant risk of harm to the decedent in their conduct and intentionally disregarded that risk. Deliberate indifference is a high legal standard. Simmons v. Navajo County 609 F3d 1011, 1019 (2010).

PLAINTIFFS also assert a Monell claim against the County of Riverside. Respondeat superior liability for a Section 1983 violation does not exist under Monell. Monell v. Depart. Public Social Services, 436 US at 690-691 (1978); 108 S. Ct. 2250, 101 L. Ed. 2d 40(1988) (quoting United States v. Classic, 313 U.S. 299, 326; 61 S. Ct. 1031, 85 L. Ed. 1368 (1941).

Public entities be liable for constitutional violations that, "implement[] or execute[] a policy statement, ordinance, regulation, or decision officially adopted or promulgated by that body's officers." Id. at 690. In other words, a municipality is liable for acts arising from an "official policy or custom." Id. at 691; see also Thompson v. City of Los Angeles, 885 F.2d 1439, 1443 (9th Cir. 'Customs" or "usages" are covered by 1983 because they "could well be so permanent and well settled as to constitute a 'custom or usage' with the force of law," Id. citing Adickes v. S.H. Kress & Co., 398 U.S. 144. 167-68; 90 S. Ct. 1598; 26 L. Ed. 2d 142 (1970). Establishing an official custom requires more than proof of the single incident of which the plaintiff complains. City of Oklahoma v. Tuttle, 471 U.S. 808, 823-24; 105 S. Ct. 2427; 85 L. Ed. 2d 791 (1985). Otherwise Monell's limitation of municipal liability would be a dead letter. "Consistent with the commonly understood meaning of custom, proof of random acts or isolated events are insufficient to establish a custom." See Thompson, 885 F.2d at 1443-44 citing Palmer v. City of San Antonio, 810 F.2d 514, 516 (5th Cir. 1987); Depew v. City of St. Mary's, 787 F.2d 1496, 1499 (11th Cir. 1986). Indeed, to prove a custom, the Plaintiff must present evidence, "that his injury resulted from a 'permanent and well-settled' practice... "Id.; see also Trevino v. Gates, 99 F.3d 911, 918 (Plaintiff must prove a "longstanding practice or custom which constitutes standard operating procedure of
KINKLE, RODIGER
AND SPRIGGS
Professional Corporation

6
DEFENDANTS' MEMORANDUM OF CONTENTIONS OF FACT AND LAW

the local government entity") (quoting <u>Gillette v. Delmore</u>, 979 F.2d 1342. 1346 (9th Cir. 1992)) see e.g. <u>Sloman v. Tadlock</u>, 21 F.3d 1462, 1470 (finding no custom based on continued conduct by one officer); <u>Bryant v. Maffucci</u>, 923 F.2d 979 (2d Cir. 1991) (no custom or policy based on single isolated incident). In determining whether the Plaintiff has produced sufficient evidence to establish a custom, the Court must remain cognizant of the widespread and distressing policies that gave shape to Section 1983 as well as the risk of improperly imposing vicarious liability on defendants based on isolated incidents of misconduct.

Since there was no underlying constitutional violation by the involved deputies, the County cannot be liable either, even if it employs unconstitutional policies. See <u>City of Los Angeles v. Heller</u>, 475 U.S. 796, 799; 106 5. Ct. 1571; 89 L. Ed. 2d 806 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the department regulations might have *authorized* the use of constitutionally excessive force is quite beside the point."

DEFENDANTS further contend that all policies and regulations of the County regarding the use of force were/are constitutionally sufficient.

PLAINTIFFS may argue there was inadequate training. As to the inadequacy of training, the Supreme Court has held that "the inadequacy of police training may serve as the basis for Section 1983 liability only where the failure to train amounts to a deliberate indifference to the rights of persons with whom the police come into contact." <u>City of Canton, Ohio v. Harris</u>, 489 U.S. 378, 389; 109 S. Ct. 1197; 103 L. Ed. 2d 412 (1989). In other words, the specific inadequacies of the training program must be so obvious that they constitute a conscious choice on the part of policymaking officials to disregard constitutional rights. <u>Id. at 389-91</u>. Further, "[t]hat a particular officer may be unsatisfactorily trained will not alone suffice to fasten liability on the city, for the officer's shortcomings may have resulted from factors other than a faulty training program....Neither will it suffice to prove that an injury or accident could have been avoided if an officer had had better or more

training, sufficient to equip him to avoid the particular injury-causing conduct. Such a claim could be made about almost any encounter resulting in injury, yet not condemn the adequacy of the program to enable officers to respond properly to the usual and recurring situations with which they must deal. Id. at 391.

Also, to the extent PLAINTIFFS' Complaint attempts to pin liability on the public entities based on a theory of ratification, this allegation, too, is without merit. For example, the Ninth Circuit was presented with a similar situation in Haugen v. Brosseau, 351 F.3d 372 (9th Cir. 2003). In that case, the plaintiff argued that the city and police department should be liable for the officer's use of deadly force on a theory of ratification as after the shooting the City allegedly failed to discipline the officer, thereby "ratifying" the officer's conduct. Id. at 393. However, the Ninth Circuit found that the single instance of failure to discipline did not rise to the level of ratification for purposes of imposing Monell liability. Id. Here, too, PLAINTIFFS will at most present a single instance of failure to discipline, which is legally insufficient. Ratification requires proof of not only approval of the conduct, but knowledge of the constitutional violation. Christie v. Iopa (1999) 176 F3d 1231, 1239. Plaintiffs have no such proof.

**State Claims**

The fifth and sixth claims for relief are for false arrest/imprisonment and battery. These claims belong to the Decedent alone. These claims are limited to only the damages that survive his death, pursuant to Code of Civil Procedure Section 377.20. Damages are limited to special damages, since general damages do not survive, pursuant to Code of Civil Procedure Section 377.34. Decedent had no special damages, thus rendering theses claim non-viable. The elements of these claims are identical to claims for Fourth Amendment unlawful arrest and excessive force, as noted above: that unreasonable force was used under the circumstances and that probable cause did not exist for decedent's detention under California Welfare and Institutions Code, Section 5150. See Edson v. City of Anaheim 63 Cal.App.4th

1269, 1273 (1998). The deputies contend that they acted in self-defense, in that they reasonably believed that Decedent was going to harm them or himself, and the amount of force they used was reasonably perceived by them to be reasonably necessary to protect themselves. CACI Instruction 1304 (2009).

PLAINTIFFS' seventh claim for relief is based negligence. Black letter law requires PLAINTIFFS to establish that the deputies were negligent, that PLAINTIFFS were harmed by their negligence, and that their negligence was a substantial factor in causing that harm. CACI Instruction 400. Negligence is the failure to use reasonable care under the circumstances to prevent harm to another. A person can be negligent by acting or by failing to act—if he or she does something that a reasonably prudent person would not do in the same situation or by failing to do something that a reasonably prudent person would do in the same situation. CACI Instruction 401. DEFENDANTS contend that the Decedent was contributorily negligent, in that his actions or failure to act caused his own harm.

### III
### APPLICABLE KEY EVIDENCE AS TO AFFIRMATIVE DEFENSES AND OPPOSITION TO PLAINTIFFS' CLAIMS

All applicable key evidence has been set forth in DEFENDANTS' Contentions of Fact or identified above, as part of DEFENDANTS' Contentions of Law.

As to PLAINTIFFS' federal claims, succinctly stated, the deputies conduct with the Decedent, who was a danger to himself and others and who repeatedly refused to comply with requests to stop resisting, was objectively reasonable and was neither deliberately indifferently nor designed to inflict harm beyond the purpose of securing the detention of the Decedent for his own safety. Decedent's death was not caused or contributed by the Defendant deputies. The County of Riverside had appropriate, constitutional policies on training and on the use of force and no policy

of theirs caused Decedent's death. They were not recklessly indifferent to PLAINTIFFS' rights.

## IV
## JURY TRIAL

All issues herein are triable to a jury, and all sides have timely demand trial by jury.

## V
## ATTORNEYS' FEES

The prevailing party in a civil rights case is entitled to seek attorneys' fees pursuant to 42 USC Section 1988, and PLAINTIFFS' First Amended Complaint seeks such fees.

## VI
## EVIDENTIARY ISSUES

Motions in limine have been filed and opposed. DEFENDANTS anticipate a Daubert issue with respect to any use of force expert testimony. DEFENDANTS also anticipate motions with respect to the late designation of Ronald O'Halloran, M.D. and the PLAINTIFFS' late disclosure of both witnesses and documents.

## VII
## BIFURCATION OF ISSUES

DEFENDANTS have sought an order bifurcating the Monell claim from other liability issues to preserve court time. If PLAINTIFFS do not prevail on their other liability claims, they cannot prevail on Monell. If PLAINTIFFS prevail on their other claims, proceeding under Monell would be duplicative, since no additional damages could be recovered under the facts presented here, since the claims all arise out of the death of Robert Appel. PLAINTIFFS have opposed this bifurcation request.

DEFENDANTS will also request that the issue of the amount of punitive damages be bifurcated into a separate phase from the liability phase, where the

predicate finding for such damages would be made. The burden of proof as to both liability for and the amount of such damages differs under state and federal law, and there is ample concern that the triers of fact might be confused by those differing standards, leading to inconsistent verdicts. PLAINTIFFS have not opposed this request.

## VIII

## **ABANDONMENT OF ISSUES**

PLAINTIFFS have abandoned their Bane Act claim.

DATED: December 20, 2011        KINKLE, RODIGER AND SPRIGGS
                                Professional Corporation



BRUCE E. DISENHOUSE